## CALIFORNIA CANNERIES CO. v. LUSH'US PRODUCTS CO.

Patent Appeal No. 2763.

Court of Customs and Patent Appeals.

June 1, 1931.

Edward D. Jones, of Chicago, Ill. (Eugene E. Stevens, of Chicago, Ill., of counsel), for appellant.

Bertha L. MacGregor, of Chicago, Ill. (Charles R. Allen, of Chicago, Ill., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

California Canneries Company, the appellant, filed opposition in the United States Patent Office to the application of the appellee, Lush'us Products Company, to register, as a trade-mark on canned peas, a mark which is substantially as follows: The picture of a chef with jacket and cap, holding a dish of peas in one hand and the cover of the dish in the other. On the mark, in conjunction with this picture of a chef, are the two words "Lush'us Peas" in heavy-faced black type.

The applicant was required by the Patent Office to disclaim the exclusive right to the use of the words "Lush'us" and "Peas," and it hence appears from the record that the only part of the mark upon which the applicant would be entitled to exclusive use would be the picture of a chef, as heretofore described.

The opposer claimed to be the owner of a trade-mark which is in evidence, and which consists of the words "Lusk's Luscious," which was registered under the act of March 19, 1920 (15 USCA § 85), certificate No. 227,714, on May 10, 1927. Opposer claimed, and established by its proof that it had been using this mark on food products, particularly for canned fruits and canned vegetables, since on or about December 1, 1921, in interstate commerce.

The applicant claimed to have been using its trade-mark for about a year prior to the taking of testimony, which was on May 6, 1929, on peas, canned fruits, and vegetables, in interstate and intrastate commerce.

The Examiner of Interferences dismissed the notice of opposition, basing his decision upon the proposition that the word "Luscious" used by the opposer was descriptive, and that it was not owned by the opposer within the meaning of the act of 1905 (15 USCA §§ 81–109); that the opposer had

based its opposition upon the confusion in trade clause of section 5 of the Trade-Mark Act of February 20, 1905 (15 USCA § 85), and could not qualify as an opposer for this reason, under section 6 of said act (15 USCA § 86). Proceeding on this premise, he concluded that no statutory damage to the opposer could exist, and therefore dismissed the opposition. The Commissioner of Patents, on appeal, affirmed this decision, and held, in so doing, that that part of the opposer's mark, namely, "Luscious," was descriptive, that the applicant was also entitled to use this word, even misspelled, and that, these being the only features of similarity between the marks, the opposer could not prevail.

There were introduced in evidence, on behalf of the opposer, certified copies of certain certificates of registration in the United States Patent Office. One of these, No. 88,830, registered October 29, 1912, by Berdan & Co., shows a picture of a chef, with cap and jacket, holding a spoon, and with the word "Chef." This mark is used on canned vegetables and other food products. Another, No. 101,617, registered January 5, 1915, by Berdan & Co., shows a similar picture of a chef, in a slightly different position, with the word "Chef," and is used on cereals and the like. No. 117,814, registered August 7, 1917, shows a similar picture of a chef, with the word "Chef," and is used by Berdan & Co., as a trade-mark on cereals, etc. No. 143,661, registered June 7, 1921, to the Lake Odessa Canning Company, shows the picture of a chef, in cap and jacket, holding a dish of peas, and is used on canned peas and the like. Several other registrations are also in evidence, showing the registration of the word "Chef" in combination with some other word, all of which registrations antedate any use made of its mark by the appellee.

Many issues are raised here which it will not be necessary to discuss. The question of the effect given to disclaimers in the United States Patent Office has been discussed in the briefs quite fully. However, we believe the practice of the Patent Office in requiring such disclaimers, without requiring the disclaimed words to be eliminated from the label, has been fully discussed and approved by the Supreme Court in Estate of Beckwith v. Commissioner of Patents, 252 U. S. 538, 40 S. Ct. 414, 64 L. Ed. 705. In the case cited, the Supreme Court reviewed the somewhat conflicting decisions of the courts with respect to the effect of these disclaimers, but came to the conclusion, after such discussion, that the practice of the Patent Office was right, and that no apparent necessity existed for the elimination of the words which were disclaimed. We therefore conclude that this is the settled rule in this jurisdiction. We so indicated in Warner-Patterson Co. v. Malcomb, 39 F.(2d) 274, 17 C. C. P. A. 984.

We have had occasion, since our jurisdiction was first established in this class of cases, to construe the provisions of the Trade-Mark Act of February 20, 1905, particularly sections 5, 6, and 7 thereof (15 USCA §§ 85–87), on several occasions. The question has been quite frequently before us as to the functions and duties of the tribunals of the Patent Office in opposition proceedings brought under said section 6 (15 USCA § 86).

In California Cyanide Co. v. American Cyanamid Co., 40 F.(2d) 1003, 1005, 17 C. C. P. A. 1198, this court, speaking through Hatfield, J., discussed section 7 of said act (15 USCA § 87), and concluded: "Accordingly, the Patent Office tribunals may, in an opposition proceeding, dispose of any question relating to the proposed registration that might properly arise in an ex parte case." In that case the opposer had been using, as a trade-mark the words "Calcium Cyanide," and the registrant was attempting to register the word "Calcyanide." In that case, as here, the Examiner of Interferences held that the opposer, having a descriptive mark, could not oppose the registration, and this holding was reversed by the Commissioner of Patents on appeal; the Commissioner also holding that the mark proposed to be registered, "Calcyanide," was descriptive, and could not be registered. We there approved the holding of the Commissioner, and held that the statutory right to oppose the registration of a trade-mark did not depend upon the exclusive ownership by the opposer of a similar mark, but that it was only necessary that he show he would probably be damaged by the registration thereof.

Another case in point is Bookman v. Oakland Chemical Co., 40 F.(2d) 1006, 1008, 17 C. C. P. A. 1213. In that case the appellant was endeavoring to register as a trade-mark the word "Peroxogen," and the opposer had been using the trade-mark "Dioxogen" on goods of the same descriptive properties, which mark had been caused to be duly registered in the United States Patent Office. There the argument was again made that the opposer could not invoke the confusion in trade clause of section 5 of the Trade-Mark Act of February 20, 1905 (15 USCA § 85),

as the basis of its opposition, and that, as the opposer could not show statutory injury by said registration, the appellant was entitled to have the mark registered, which is the argument here. There this court said:

"The question of the descriptiveness of appellant's mark, in view of the quoted definitions, requires no discussion. Obviously, if the word 'Dioxogen' is descriptive, the word 'Peroxogen' is none the less so. If neither is descriptive, then, in our opinion, the use by appellant of the mark 'Peroxogen' on goods possessing the same descriptive properties as those on which appellee uses its registered mark 'Dioxogen' would be likely to cause confusion in the mind of the public and to deceive purchasers.

"The right to oppose the registration of a trade-mark is not limited to those who possess exclusive ownership of a similar mark; nor are the Patent Office tribunals limited, in an opposition proceeding, to a consideration of the precise questions presented in a notice of opposition. On the contrary, in such a proceeding, they may dispose of any question relating to the proposed registration that might properly be considered in an ex parte case."

We have recently reiterated the doctrine that in opposition proceedings the registrability of the mark is directly involved. Etablissements Rene Beziers v. Reid, Murdoch & Co., 48 F.(2d) 946, 18 C. C. P. A. ——; Federal Mill & Elevator Co. v. Pillsbury Flour Mills Co., 49 F.(2d) 1042, 18 C. C. P. A. ——.

When the opposition proceeding herein was begun, the application of the appellee for registration was pending in the Patent Office, and was subject to any action which might lawfully be taken there. It had gone to publication in the Official Gazette, but no certificate had been issued. Therefore, it was within the power of the Commissioner of Patents to allow or disallow the issuance of the certificate of registration. His power to do this did not depend upon the opposition. However, when the opposition proceedings were begun, the first question presented to the tribunals of the Patent Office, under section 7 of the Trade-Mark Act of 1905 (15 USCA § 87), was "to determine the question of the right of registration to such trade-mark." The appellant had disclaimed the use of the words "Lush'us" and "Peas." It is obvious, from the registrations appearing in the record, that the picture of a chef holding a dish of peas was already in use, as a trade-mark, by many other registrants. In view of this situation, it is plain that the appellant was not entitled to registration of its mark. There was no part of it which had not been disclaimed, but which was the subject of registration to others already in the field. This being true, it becomes unimportant to determine the many questions which are raised as to the validity of appellant's mark.

To register the proposed mark of the appellee would produce confusion in trade, irrespective of appellant's use of its mark. The statute was not intended to promote such confusion, but to prevent it. Therefore, in the proceedings of the tribunals of the Patent Office, and in the exercise of our jurisdiction, there should be constantly kept in mind the objects of the statute, which are the promotion of the interests of the trade and commerce of the country, and the protection of trade-marks which are lawfully used or owned by those engaged in such trade and commerce.

The decision of the Commissioner of Patents is reversed, and an order will be entered denying appellee's application for registration.

Reversed.